**UNITED STATES DISTRICT COURT IN AND FOR**
**THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JUDE CHRISTENSEN,
a/k/a JUDE GILLESPIE-CHRISTENSEN,

    *Plaintiff,*

v.                                                                          CASE NO.

MARYANN LYNCH a/k/a
MARY ANN LYNCH,

    *Defendant.*
_____/

**VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND INCORPORATED MEMORANDUM OF LAW**

**INTRODUCTION**

    Plaintiff Jude Christensen, Esq., appearing *pro se*, pursuant to Fed. R. Civ. P. 65 and Local Rule 6.01, respectfully submits this Verified Motion for Temporary Restraining Order and Incorporated Memorandum of Law, in support of his motion to restrain and enjoin the Defendant from enforcement of a default final judgment and/or writ of possession issued by the County Court in favor of Defendant Maryann Lynch and to be executed against Plaintiff.

    This motion is necessary to protect the Plaintiff from imminent and irreparable harm as Plaintiff has received a Writ of Possession that requires his *immediate* departure despite the irreparable injury that he will suffer, as set forth in greater detail below.

    1.    Defendant filed an eviction action against Plaintiff in retaliation for Plaintiff having filed a code compliance complaint with the City of Saint Petersburg. As a direct result of

Plaintiff's complaint, the City has ordered Defendant to perform repairs in Plaintiff's apartment that constitute health and building code violations according to the Municipal Ordinance of the City. See Case No. 21-13095, at https://actiononline.stpete.org/Click2GovCE/casesearch.html. (last visited April 26, 2023), and screenshot reproduced below. (Website hereinafter referred to as "Code Enforcement Database").



| Action Type | Scheduled Date | Status |
|---|---|---|
| INITIAL INSPECTION | 06/03/2021 | Completed |
| RECORD CHECK | 06/04/2021 | Completed |
| VIOLATION NOTICE | 06/04/2021 | Issued |
| EXTENSION GRANTED LETTER | 06/23/2021 | Issued |
| ELECTRONIC MAIL | 06/24/2021 | Completed |
| REINSPECTION | 07/27/2021 | Completed |
| RECORD CHECK | 08/09/2021 | Completed |
| CEB NOTICE OF HEARING | 09/01/2021 | Issued |

2.      According to Code Enforcement's Database, the Defendant has been required to have repaired the code violations in Plaintiff's apartment by December 11, 2021 — nearly 18 months ago. To date, the sole action Defendant has taken with regard to Plaintiff's complaint is to file an unlawful retaliatory eviction action against him. Defendant is scheduled to appear at a hearing before a special master, at which hearing a fine of **$ 79,200.00**. This exorbitant fine has arisen solely because of Defenant's contumacious refusal to comply with the Board's Order, a true and correct copy of which is attached hereto, and incorporated by reference.



3. The enforcement of the default final judgment and writ of possession violates Plaintiff's rights under the United States Constitution, as well as the protections afforded to him by the City of Saint Petersburg's Ordinance 8-203. Plaintiff intends to file a Fair Housing Act lawsuit as the underlying complaint. However, due to the urgent circumstances and the potential for irreparable harm faced by the Plaintiff, this motion for a preliminary injunction must be filed prior to the submission of the complaint.

4. In compliance with Fed. R. Civ. P. and this Court's Local Rules, the undersigned attempted to resolve this emergency with Defendant's counsel, but despite having received multiple read return receipts from Defendant's counsel, opposing counsel did not confer with the undersigned.

5. In the Middle District of Florida, the party seeking a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) that irreparable harm will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief

would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. See, e.g., Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

6. In *Robinson v. Diamond Housing Corporation*, 463 F.2d 853 (D.C. Cir. 1972), the United States Court of Appeals for the District of Columbia was faced with a situation strikingly similar to the one presented in this Petition. Upon reviewing the relevant facts and the law, particularly the analysis and conclusions drawn in *Robinson*, it is respectfully submitted that the Plaintiff has successfully demonstrated each of the elements necessary for the Court to grant a preliminary injunction in this case.

### JURISDICTION AND VENUE

7. Plaintiff, Jude Christensen, Esq., is a resident of the State of Florida and brings this action in their individual capacity.

8. Defendant, Maryann Lynch, is believed to be a resident of Duval County, Florida and is being sued in her individual capacity.

9. This Court has personal jurisdiction over Defendant because she is a resident of Florida and the claims asserted against her arise from her alleged conduct within the State. Furthermore, this Court has subject matter jurisdiction over the claims asserted against Defendant as they arise under the Fair Housing Act, 42 U.S.C. § 3601 et seq., and other federal laws, pursuant to 28 U.S.C. § 1331.

10. Plaintiff Jude Christensen, Esq., is a resident of an apartment unit owned by Defendant Maryann Lynch, located within the jurisdiction of the City of Saint Petersburg.

11. On or about August 6, 2021, Plaintiff filed a code enforcement complaint with the City of Saint Petersburg's Code Compliance Department. Case No. 21-13095 was opened and

investigated. Upon investigation, multiple health and building code violations were determined to exist, and two (2) Violation Letters were sent by certified mail to Defendant. *Infra.*

12.     The City of Saint Petersburg's City Council has enacted Ordinance 8-203, which prohibits the rental of an apartment unit with uncorrected code violations:

> Sec. 8-203. - Letting of rental unit with uncorrected code violation prohibited; duty of owner to correct code violations.
>
> (a) The owner of a rental unit who has been given notice of violation of one or more of the requirements of this article shall have the following affirmative duties:
>
> (1) The owner shall not interfere with the rights of the tenant of the rental unit due to the tenant's having permitted a Codes Investigator, Fire Official, or other designee of the POD to inspect the rental unit, or to inspect any common area of the premises, and shall not prevent the tenant from giving access to any such official of the City for the purposes of inspecting the rental unit or common areas of the premises. The owner shall not terminate a rental agreement or refuse to renew a rental agreement with a tenant or discriminate against a tenant because the tenant, any member of the tenant's family, or any guest has permitted access to the rental unit or common area of the premises by a Codes Investigator, Fire Official, or other designee of the POD for the purpose of inspection
>
> (2) If the rental unit becomes vacant, the owner shall correct the violations and shall request an inspection by the Codes Investigator, Fire Official, or other designee of the POD, and shall not let the rental unit to any tenant or hold the rental unit out to the public as being available for occupancy the POD has determined that the violations have been corrected.
>
> (b) **No person shall let any rental unit to another for occupancy or allow any other person to occupy any rental unit, after notice that a violation of one or more of the requirements of this article exists within the rental unit has been served upon the owner and the owner has failed to correct the violation or has failed to obtain an inspection of the rental unit by a Codes Investigator, Fire Official, or other designee of the POD to verify that the violation has been corrected.**
>
> (c) Vacancy of the rental unit shall not be a defense to a violation of this section unless the property owner certifies to the City under oath that the residential use has been abandoned and the property has been converted to a nonresidential use.
>
> (Code 1992, § 8-323; Ord. No. 793-G, § 2, 10-5-2006)

[Emphasis added].

13. It is, therefore, illegal for Plaintiff to rent the subject apartment until such time that she has complied with Ordinance 8-203. However, Defendant does not have, nor has she ever had any intention to comply with the terms of the Board's Order. The Plaintiff's agent, in fact, issued a veiled threat to the City's Director of Code Enforcement, stating:

From: "James A. Corbett"

<James.Corbett@stpete.org> To: "Joe Waugh" <Joe.Waugh@stpete.org> Date: 4/25/2022 2:53:01 PM Subject: FW: Affordable housing - Fwd: Floor condition

From: Chet Hewitt <chet@timessquareproperties.com>Sent: Monday, April 25, 2022 9:35 AM

To: James A. Corbett <James.Corbett@stpete.org>Subject: Affordable housing –

> Fwd: Floor condition
>
> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.
>
> Hey James. I've reached out to a few folks at the mayors office and was told I should reach out to you directly. I am the general manager at Times Square properties here in st Pete. We re one of the last larger companies (300ish Apts) providing housing in the 700-1200/ month range. Our buildings are older.
>
> Our buildings are inspected by the fire dept to ensure they're safe and meet current fire code standards. We do our best to provide affordable housing because it's consistent with owner maryann Lynch's vision for the company.
>
> Over the past few years we've run into some issues with codes compliance. We understand the city is gentrifying. We understand that means more scrutiny on some of our buildings downtown. This has caused us to reevaluate what is and isn't viable in the city when a simple codes complaint turns into a 4 page list of issues.
>
> Below are some pics of a potential code violation. 100 year old yellow pine floors are not perfect in many cases. Termite damage is sometimes a reality. We do our best to replace and restore these floors.
>
> I think we re being held ultimately to an unfair standard when the floor below (in another unit) has been cited as a code violation and wood putty has been used to fix, and codes compliance will not clear the code.
>
> If we could have a meeting I could likely help explain in greater detail. We re not looking for special treatment. We re not asking for the city to not pay attention to obvious safety issues.

> Thanks!
>
> Chet
>
> [Phone Number Redacted]
>
> Or email me. I would appreciate it greatly!

[Emphasis added. Spelling errors in original].

14. The above email was obtained by the undersigned from the City by the undersigned pursuant to a Public Records Act, and provides substantial evidence for the Defendant's contumacious refusal to comply with the City's Order. The email confirms that Defendant has—nor ever had—any intention to comply with the Board's Order by repairing the code violations extant in Plaintiff's apartment.

15. Clearly, Defendant seeks to circumvent the City's enforcement process by applying pressure upon the Director for Code Enforcement that unless he clears the subject violations then the Plaintiff will eliminate housing for 300+ apartments. This is an veiled threat and demonstrates the On October 27, 2021, the City of Saint Petersburg's Hearing Board issued an order directing the Defendant to repair certain code violations existing at the property by December 21, 2021, or face a fine of $150 per day. The Defendant's willful and contumacious disregard for the Board's Order has led to the accrual of over $70,000 in fines as of the date of this Petition.

16. In addition to the Board's Order, the Plaintiff has made numerous attempts to address the code violations and the water leakage and mold issues in Plaintiff's apartment. Despite these efforts, the Defendant has consistently and deliberately failed to comply with the Board's Order and address the existing code violations, demonstrating contumacious behavior towards her obligations as a landlord.

17. Despite the known code violations and the Defendant's contumacious refusal to address them, the Defendant sought and obtained a default final judgment and writ of possession against the Plaintiff in the County Court.

18. Just as importantly, Plaintiff has filed a retaliation Fair Housing Act lawsuit against the Defendant, which HUD's enforcement director confirmed is ongoing. The HUD enforcement director has acknowledged the delay in concluding the investigation, and a true and correct copy of her email is reproduced below.



19. In addition, Plaintiff's spouse, D'Artagnan Christensen, who is a named co-signatory to the lease that the county court considered as the operative lease, however, the Writ of Possession has been entered without affording him Constitutional due process by the Defendant's failure to have joined him as an indispensable party to the county court action. Attached hereto, and incorporated by reference, is a copy of the county courts: Order Determining Rent to Be Deposited to Court Registry; The Default Final Judgment of Possession; the Writ of Possession; and, the Defendant's Complaint along with its attachments, including the lease.

20. There are additional reasons for the invalidity of the Defendant's eviction action, including the making of false statements under oath or within the body of Plaintiff's complaint. Due to time constraints caused by the emergency, Plaintiff will detail these additional concerns in his forthcoming complaint.

As discussed above, Plaintiff must establish the following four factors in order to be entitled to temporary injunctive relief. It is respectfully suggested that Plaintiff satisfies each of the following requisites.

A. Substantial Likelihood of Success on the Merits

The Plaintiff is likely to succeed on the merits of the underlying claim, as the enforcement of the default final judgment and writ of possession violates the Plaintiff's rights under the United States Constitution and conflicts with the protections provided by Saint Petersburg Ordinance 8-203. Furthermore, the Defendant's contumacious refusal to comply with the Board's Order and address the code violations serves as a basis for the Plaintiff's claims.

B. Irreparable Injury

The Plaintiff will suffer irreparable injury if the enforcement of the default final judgment and writ of possession is not enjoined, as it would result in Plaintiff's wrongful eviction from the apartment unit, which has uncorrected code violations that the Defendant has consistently failed to address. The loss of housing and the potential exposure to health hazards due to the uncorrected code violations constitute irreparable harm to the Plaintiff. Furthermore, even the most minor Constitutional violations can be considered as irreparable injuries. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

C. Balance of Hardships

The balance of hardships weighs in favor of granting the preliminary injunction, as the potential harm to the Plaintiff, including the loss of housing and exposure to health hazards, far outweighs any harm to the Defendant, who has demonstrated a contumacious refusal to address the existing code violations despite being under a legal obligation to do so.

D. Public Interest

The public interest is served by the issuance of a preliminary injunction in this case, as it would promote compliance with the City of Saint Petersburg's Ordinance 8-203 and protect the rights of tenants against landlords who refuse to comply with their legal obligations to address code violations.

The public interest is further served by granting the preliminary injunction because the legislative intent behind the City's ordinance aims to protect whistleblowers and encourage citizens to enforce housing codes. By safeguarding the rights of those who report violations, the ordinance promotes compliance with housing regulations, ensuring the safety and well-being of all residents. In this case, preventing the enforcement of the default final judgment and writ of possession aligns with the public interest by upholding the objectives of the City's ordinance and fostering a safer, more compliant community.

An additional argument in support of the preliminary injunction is that the judiciary's enforcement of a contract that the legislature has expressly prohibited constitutes a violation of the separation of powers doctrine. The separation of powers is a fundamental principle of the United States Constitution, which divides governmental powers among the legislative, executive, and judicial branches to prevent the concentration of power in one branch and to ensure that each branch serves as a check on the others.

In this case, the City of Saint Petersburg's Ordinance 8-203 was enacted by the legislative branch to prohibit the rental of an apartment unit with uncorrected code violations. By enforcing a contract, such as the lease agreement in question, that the legislature has explicitly deemed unlawful, the judiciary is essentially overstepping its bounds and infringing upon the legislative domain.

The judiciary's primary role is to interpret and apply the laws enacted by the legislature, rather than to contravene or undermine the intent behind those laws. Enforcing a contract that is in direct violation of a duly enacted ordinance disrupts the balance of power between the branches and weakens the effectiveness of the legislative process. Thus, granting the preliminary injunction in this case would not only protect the Plaintiff's rights but would also uphold the fundamental principle of separation of powers, maintaining the proper balance among the branches of government.

## CONCLUSION

In conclusion, Plaintiff has demonstrated a substantial likelihood of success on the merits, the potential for irreparable harm, the balance of hardships tipping in his favor, and that the public interest would be served by granting a preliminary injunction. Enforcing the default final judgment and writ of possession would violate the Plaintiff's rights under the United States Constitution, the City of Saint Petersburg's Ordinance 8-203, and the principle of separation of powers. By granting the preliminary injunction, this Court would uphold the rule of law, protect the Plaintiff from imminent and irreparable harm, and maintain the proper balance among the branches of government.

Accordingly, Plaintiff respectfully requests that this Court grant the motion for a preliminary injunction, restraining and enjoining the enforcement of the default final judgment

and writ of possession issued by the County Court and to be executed against Plaintiff until the resolution of the underlying Fair Housing Act lawsuit.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jude Christensen, Esq., respectfully requests that this Court enter an order:

1. Granting a preliminary injunction to restrain and enjoin the enforcement of the default final judgment and writ of possession issued by the County Court against the Plaintiff;

2. Awarding Plaintiff costs and attorneys' fees incurred in this action; and

3. Granting such other and further relief as the Court may deem just and proper.

I, Jude Christensen, Esq., declare under penalty of perjury that the foregoing Petition is true and correct to the best of my knowledge and belief.

*-- s/ Jude Christensen, Esq.*

Respectfully submitted this 26th day of April, 2023.

*s/ JUDE CHRISTENSEN*
_____
JUDE CHRISTENSEN, ESQ.
FLORIDA BAR NUMBER 949401